# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,

                    Plaintiff,

v.

Luis Angel Garcia,

                    Defendant.

**Case No. 16-cr-333 (DWF/SER)**

**REPORT AND RECOMMENDATION**

Nathan P. Petterson, Esq., United States Attorney's Office, Minneapolis, Minnesota, for Plaintiff.

Ryan Patrick Garry, Esq., Minneapolis, Minnesota, for Defendant.

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case comes before the undersigned on Defendant Luis Angel Garcia's ("Garcia") Motion for a *Franks* Hearing ("*Franks* Motion") [Doc. No. 25] and Motion to Suppress Evidence Obtained as a Results of Search and Seizure ("Motion to Suppress") [Doc. No. 27] (collectively, "Garcia's Motions"). This matter was referred for the resolution of the issues raised in Garcia's Motions pursuant to 28 U.S.C. § 636(b)(1)(B)–(C) and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends that Garcia's Motions be denied.

## I.      BACKGROUND

On December 14, 2016, a grand jury indicted Garcia with one count of possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A). (Indictment) [Doc. No. 9 at 1]. At a pretrial motions hearing on March 9, 2016, the Court received into evidence: Exhibit 1, Drug Enforcement Administration ("DEA") Special Agent Mark Rosborg's ("SA Rosborg") Report of Investigation ("ROI");

Exhibit 2, the search warrant application and supporting affidavit for Garcia's hotel room; Exhibit 3, the search warrant application and supporting affidavit of Garcia's vehicle; Exhibit 4, DEA Agent Jesse Place's ("Agent Place") ROI; Exhibit 5, affidavit of SA Rosborg; Exhibit 6, photo of Garcia's vehicle. (Ex. & Witness List) [Doc. No. 32].

Also during the hearing, the Court requested supplemental briefing from both parties on Garcia's Motions. (Minute Entry Dated Mar. 9, 2017) [Doc. No. 31]. The Court stated that it "will only address those issues identified and supported by the parties in their supplemental briefing." (*Id.*). Garcia submitted his supplemental briefs on March 23, 2017. (Def.'s Mem. in Supp. of *Franks* Mot.) [Doc. No. 37]; (Def.'s Mem. in Supp. of Mot. to Suppress) [Doc. No. 38]. The Government responded on March 30, 2017. (Gov't Post-Hearing Mem. in Opp'n to Def.'s Mots. for a *Franks* Hearing and to Suppress Evidence, "Mem. in Opp'n to Garcia's Mots.") [Doc. No. 39].

With respect to Garcia's *Franks* Motion, Garcia argues that "SA Rosborg knowingly and intentionally made false statements and omissions in his search warrant affidavits to mislead the signing judge, or in reckless disregard of the omitted information's misleading effect." (Def.'s Mem. in Supp. of *Franks* Mot. at 9). In particular, Garcia argues: (1) inconsistent descriptions of the vehicle color imply a reckless misrepresentation; (2) SA Rosborg's and Agent Place's failure to note the vehicle's dealership plates in their respective ROIs suggests that SA Rosborg "intentionally misrepresented" the description of the plates provided by the confidential source ("CS") in the affidavits; (3) SA Rosborg misrepresented the timing of communications between the CS and Garcia; (4) SA Rosborg's "statement that the check-in date coincided with the CS'

claim of Torres' arrival"[1] is a misrepresentation because there is nothing to suggest that the CS knew when Garcia would arrive; (5) SA Rosborg failed to note the uncertainty of both the Kansas City District Office (the "KCDO") and the CS; (6) the statement that law enforcement "located a vehicle matching the description of the one alleged to be driven by Torres" is false in light of the other misrepresentations; and (7) the statement suggesting a connection between Garcia and the August 2016 drug-related arrest and seizure is misleading because there is no connection "between Mr. Garcia and the previous drug bust." (*Id.* at 10–14). For these reasons, Garcia argues that absent the challenged language in the search warrant affidavits, the remaining evidence in the search warrant affidavits cannot establish probable cause. (*Id.* at 14–15). In addition to the above reasons, Garcia also argues that suppression of evidence is warranted because the inconsistencies suggest that the CS is an unreliable source and the Government's failure to conduct a reasonable investigation further illustrates that the searches were conducted without probable cause. (Def.'s Mem. in Supp. of Mot. to Suppress at 9–12).

With respect to Garcia's *Franks* Motion, the Government argues that Garcia "has failed to establish that there were any false statements or omissions contained in the search warrant affidavits." (Mem. in Opp'n to Garcia's Mots. at 5). With respect to Garcia's Motion to Suppress, the Government argues that the warrants were supported by probable cause, and in the alternative, that the warrants were executed in good faith and thus any suppression of evidence is unwarranted under *United States v. Leon*, 468 U.S. 897 (1984). (*Id.* at 7–11).

## II.    FACTS

---

[1]     The CS refers to Garcia as "Alex Torres." Law enforcement later surmised, based on the available evidence, that "Alex TORRES was most likely a pseudonym for GARCIA." (Ex. 1 ¶ 8). For consistency, "Alex Torres" is only referenced as part of a direct quote from a supporting exhibit. Otherwise, the Court uses Garcia when referencing him in its analysis because he is the named defendant.

Garcia's Motions arise out of an arrest for possession with intent to distribute that occurred on November 14, 2016, when agents from the Minneapolis-St. Paul District Office ("MSPDO") of the DEA executed two search warrants in St. Cloud, Minnesota. (Ex. 1 at 5).[2]

Leading up to the arrest, in August of 2016, DEA agents from the MSPDO "seized approximately 55 pounds of methamphetamine from a vehicle that had traveled from Kanas City, MO to Minneapolis, MN." (Ex. 2 ¶ 1). This arrest was facilitated, in part, by information received by the KCDO from the CS. (*Id.*). "The resulting seizure led to the identification of the drug trafficking organization's (DTO) transportation network." (*Id.*).

On November 12, 2016, SA Rosborg was contacted by the KCDO "regarding a possible load vehicle containing a large quantity of methamphetamine traveling from California to Minnesota." (Ex. 1 ¶ 3). The vehicle containing the methamphetamine was described as "a late model, black Mercedes Benz coupe." (*Id.*). SA Rosborg was further advised that the vehicle would be "traveling north [on] I-35 towards Minneapolis." (*Id.*). Like the previous information that led to the August 2016 seizure of approximately fifty-five pounds of methamphetamine, the CS provided this information to the KCDO. (*Id.*).

SA Rosborg attempted to reach the CS on numerous occasions, finally making contact via telephone on November 14, 2016. (*Id.* ¶ 4). "The CS stated that an individual known to him/her as 'Alex TORRES' was in St. Cloud, MN, with, what the CS believed to be, approximately 20 pounds of meth in his possession" and was likely parked in a hotel parking lot. (*Id.*). Based on the CS's tip, SA Rosborg contacted the St. Cloud Police who canvassed the area looking for a car that matched the description provided by the CS. (*Id.* ¶¶ 5–6).

---

[2]     When referencing exhibit pages, Bates numbers without the leading zeros are used.

"At approximately 1:30 p.m., [St. Cloud Police] located a dark in color, late model Mercedes Benz coupe, . . . at the Hampton Inn hotel parking lot located at 145 37 Ave. North, St. Cloud, MN." (*Id.* ¶ 7). At that time, the car was observed to have dealer plates from Fusion Motors. (*Id.*); *see also* (Ex. 4 ¶ 2). "An open source check" revealed that Fusion Motors is located in Moreno Valley, California. (Ex. 1 ¶ 7).

"At approximately 1:45 p.m., SA Rosborg [and local authorities] entered the hotel, identified themselves as law enforcement, and requested the guest registry." (*Id.* ¶ 8). The hotel staff accommodated the request "by showing who was currently checked in to the hotel." (*Id.*). "SA Rosborg noted that approximately 15 guests were checked in to the hotel at that time. Notably, only one guest was from California – Luis Angel GARCIA." (*Id.*). The hotel staff stated that Garcia "was supposed to check out on November 13, but extended his stay until November 15." (*Id.*). The staff also noted that a credit card was ordinarily required to hold the room, with Garcia did not have. (*Id.*). Garcia later returned with a "Green Dot, cash to credit, credit card," which Garcia used to hold the room. (*Id.*). Because other members of the DTO travelled pseudonymously and paid with cash, the law enforcement officers surmised that "Alex TORRES was most likely a pseudonym for GARCIA." (*Id.*).

While the room was under surveillance by local authorities, SA Rosborg authored two search warrants: one for Garcia's hotel room and another for his vehicle. (*Id.* ¶ 9); *see also* (Ex. 2) (application and supporting affidavit for a search warrant for the hotel room); (Ex. 3) (application and supporting affidavit for a search warrant for the vehicle). The Honorable Judge Kris Davick-Halfen signed the warrants at approximately 3:30 p.m. (Ex. 1 ¶ 9).

"At approximately 4:20 p.m., agents made entry to room #327 and arrested Luis Angel GARCIA." (*Id.* ¶ 10). Garcia was found attempting to dispose of approximately twelve pounds

of a substance that later field-tested positive as methamphetamine. (*Id.* ¶¶ 10, 12). In addition to the twelve pounds of methamphetamine, a stolen handgun and the key to the identified Mercedes was found in the hotel room. (*Id.* ¶ 10).

The Government filed its criminal complaint against Garcia on November 15, 2016. (*Id.* ¶ 14); *see also* (Compl.) [Doc. No. 1].

## III.   DISCUSSION

### A.   Legal Standard

The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Search warrant affidavits are presumptively valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). A defendant may nevertheless challenge the veracity of the affidavit offered in support of probable cause. *See United States v. Sundby*, 186 F.3d 873, 876 (8th Cir. 1999). When challenging an affidavit in support probable cause, it is Garcia's burden to establish that the search warrant affidavit includes statements of "deliberate falsehood or of reckless disregard for the truth." *Franks*, 438 U.S. at 171. It is insufficient to meet this burden by providing conclusory arguments that the search warrant affidavit includes falsehoods or recklessly disregards the truth. *Id.* Instead,

> allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Id.*

6

Under *Franks*, the Eighth Circuit has established that "[i]n order to be entitled to a hearing . . . the defendant must make a 'substantial preliminary showing' of a false or reckless statement or omission and must also show that the alleged false statement or omission was necessary to the probable cause determination." *United States v. Milton*, 153 F.3d 891, 896 (8th Cir. 1998) (citing *United States v. Fairchild*, 122 F.3d 605, 610 (8th Cir. 1997)). "Such a showing is not easily made." *United States v. Engler*, 521 F.3d 965, 969 (8th Cir. 2008); *see also Milton*, 153 F.3d at 896 ("The 'substantial preliminary showing' requirement needed to obtain a *Franks* hearing is not lightly met"). Stated differently, "[a] mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing [under *Franks*]." *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998). Suppression is only warranted if the movant meets its burden and the remaining statements "**could not** have supported the existence of probable cause." *United States v. Lueth*, 807 F.2d 719, 726 (8th Cir. 1986).

**B.   Analysis**

As a threshold matter, many of Garcia's arguments are difficult to understand because they seem to be at odds with facts contained within the exhibits provided in support of these arguments. Nevertheless, the allegations that the Court understands Garcia to make fail because Garcia allegations are unsupported by reliable corroboration. For example, the thrust of Garcia's arguments allege that the presence of inconsistencies between the ROIs prepared by SA Rosborg and Agent Place and the statements made by SA Rosborg in the affidavits in support of the search warrants establish that SA Rosborg misled Judge Davick-Halfen. *See generally* (Def.'s Mem. in Supp. of *Franks* Mot. at 9–14). These allegations are an ineffective means for Garcia to meet his substantial burden for a number of reasons.

7

First, Garcia provides no support for his implications that an ROI must mirror a search warrant affidavit. Neither party addresses when an ROI is typically prepared in their briefing of the issues. Nevertheless, because the ROIs and search warrant affidavits are not in direct contradiction, the exact timing of when the ROIs were drafted is of little concern. Also, the search warrant affidavits and ROIs may differ for reasons that do not implicate a deliberate intent to falsify information in the search warrant affidavit. *See, e.g.*, (Mem. in Opp'n to Garcia's Mots. at 5) ("There would be no reason for all future reports to mirror the search warrant affidavits, which were written for a completely different purpose."). As such, these alleged inconsistencies are by themselves insufficient to show—let alone reliably corroborate—that information contained in the search warrant affidavits is false or that statements or omissions were made in reckless disregard for the truth.

Second—and perhaps more importantly—the issue before the Court is not whether the search warrant affidavits contain inconsistencies that may give rise to some level of uncertainty. As described below, a probable cause determination survives in the face of some uncertainty. Under *Franks*, the crux of the matter before the Court is whether the search warrants were obtained on the basis of statements that are demonstrably false or statements or omissions that are made with reckless disregard for the truth. *Franks*, 438 U.S. at 171. Only after this initial burden is met does the Court need to determine whether sufficient probable cause exists in the absence of the challenged statements. *See, e.g.*, *Milton*, 153 F.3d at 896; *Lueth*, 807 F.2d at 726. Aside from the fact that the Court cannot identify any case law that would suggest that an ROI must mirror a search warrant affidavit, Garcia has not established that SA Rosborg's statements are demonstrably false or that his statements or omissions are made with reckless disregard for the truth, notwithstanding the various inconsistencies that Garcia alleges are present.

Consequently, Garcia has not provided the Court with a "substantial preliminary showing" of the falsity of SA Rosborg's statements as required under *Franks*. *See Mathison*, 157 F.3d at 548. This alone would be a sufficient basis to deny the *Franks* hearing. *See Engler*, 521 F.3d at 970 (affirming denial of a Franks hearing requested on the basis of an officer's omissions, because Plaintiff's arguments amounted to "assertions without any supporting proof that they [were] accurate" because the Plaintiff "provided no evidence to establish that . . . officers deliberately or recklessly omitted information" and "did not provide an explanation for the absence of such evidence").

Furthermore, *United States v. Reinholz*, 245 F.3d 765 (8th Cir. 2001), upon which Garcia relies, is inapposite to the facts of this case. In *Reinholz*, the Eighth Circuit affirmed the district court's determination that law enforcement misled the judge issuing the warrant because a local pharmacist did not have personal knowledge of the defendant's methamphetamine use and distribution and thus the claim of receiving "information from a 'confidential and reliable source' recklessly misrepresented the nature of [the] source." 245 F.3d at 774. In particular, the source in *Reinholz* "was a local pharmacist who knew only that Reinholz purchased iodine crystals." *Id.* at 773. "The pharmacist thought that Reinholz was manufacturing, distributing, and using methamphetamine because he knew of no legitimate use for iodine crystals." *Id.* at 769. While iodine crystals may be used to manufacture methamphetamine, they have many legal uses. *See id.* at 769 n.2 ("Iodine crystals may also be used by farriers, farmers, and veterinarians to treat infections in horses' hooves, as an ingredient for producing germicides, fungicides, antiseptic, as a disinfectant, and in animal feeds."). *Reinholz* seems to suggest that the speculation about the iodine crystals that the pharmacist made (a general knowledge fact regarding the usage of iodine crystals) is different than the specific information needed to

support probable cause. *See id.* at 774 ("Contrary to Officer Podany's statement, the pharmacist was not a confidential source and his reliability was not related to any personal knowledge of or corroborated information concerning Reinholz's methamphetamine use.").

The CS here is of a different character than the source in *Reinholz*. There is nothing to suggest that the CS is not a confidential source. *See, e.g.*, (Ex. 1 ¶ 3) (redacting the CS's identification number in an attempt to maintain the CS's anonymity). More importantly, there is nothing to suggest that the CS was unreliable. The CS previously provided tips that led to the seizure of approximately fifty-five pounds of methamphetamine from a vehicle traveling to Minneapolis, Minnesota. *See, e.g.*, (Ex. 2 ¶ 1). Furthermore, the CS appears to have more personalized knowledge of Garcia's activities than the source in *Reinholz* did with respect to the defendant there. *Compare, e.g.*, (Ex. 2 ¶ 3) (stating that the CS had been in contact with Garcia within the last four hours regarding Garcia's transportation of methamphetamine), *with Reinholz*, 245 F.3d at 773 (stating that the source "knew only that Reinholz purchased iodine crystals"). This suggests that the CS was a reliable source, not an unreliable one under *Reinholz. Accord United States v. Conant*, 799 F.3d 1195, 1200–01 (8th Cir. 2015) (finding that past reliabilities of a confidential source made reliance on *Reinholz* inappropriate); *United States v. Skarmstad*, 649 F.2d 1259, 1265 (8th Cir. 1981) (holding that an informant's reliability is not in doubt when "the affidavit adequately established the reliability of the informant by referring to the informant's history of investigative cooperation which led to the arrests of . . . narcotics offenders"). Likewise, there is nothing to suggest that the information provided by the CS is a general knowledge fact that is unable to support a probable cause determination under *Reinholz*. In addition to the specific information stating that Garcia was traveling with methamphetamine, the CS provided specific information regarding: the make, model, and color of Garcia's vehicle;

point of origin; and the fact that Garcia was staying at a hotel in St. Cloud, Minnesota. *See* (Ex. 2 ¶ 2) (describing the information provided by the CS). The CS's account was independently corroborated by law enforcement. *See, e.g.*, (*id.* ¶¶ 3–5) (detailing the manner in which the law enforcement corroborated the CS's information). Consequently, any arguments Garcia makes in reliance on *Reinholz* with respect to the reliability of the CS's information or impact on a probable cause determination are unpersuasive.

In the interest of thoroughness, however, the Court addresses Garcia's arguments in support of his motions. Because Garcia's arguments are meritless (because they are both unsupported and unpersuasive), his *Franks* Motion fails. Because the presumption of the validity of the search warrant affidavits is undisturbed, there is nothing to suggest that the search and seizure conducted pursuant to these search warrants are unsupported by probable cause and Garcia's Motion to Suppress should likewise be denied.

### 1.     Vehicle Color

Garcia first argues that inconsistencies in the search warrant affidavits with respect to the color of the vehicle support a determination "that SA Rosborg misrepresented this information in the search warrant affidavits." *See* (Def.'s Mem. in Supp. of *Franks* Mot. at 10). In particular, Garcia argues that because SA Rosborg's first mentions that the black vehicle had red accents in his search warrant affidavits, this shows he intentionally attempted to give the affidavits "more credibility." *See* (*id.*). It is not entirely clear from Garcia's arguments how SA Rosborg's inclusion of red accents would give the affidavits more credibility; SA Rosborg included various descriptions of the vehicle in the affidavit as his understanding of its color changed at various stages of the investigation. For example, in the search warrant affidavits, SA Rosborg stated that he first received information of a vehicle that was "black in color with red accents." (Ex. 3 ¶ 2).

After law enforcement canvassed the area on the basis of the CS's tip, they located a Mercedes coupe that was "dark in color." (*Id.* ¶ 4). Finally, when applying for a search warrant, SA Rosborg identified the car to be searched as "[s]ilver." (Ex. 3 at 25, 27). To suggest, as Garcia does, that the inclusion of the "red accents" descriptor somehow rises to a false statement or a statement made with reckless disregard for the truth strains credulity.

SA Rosborg's inclusion of the various vehicle descriptions does not clearly demonstrate that SA Rosborg misrepresented this information to Judge Davick-Haflen—as Garcia suggests. Instead, the different descriptions suggest that SA Rosborg was providing truthful information to Judge Davick-Haflen, evidencing the different understandings of the vehicle's color at the various stages of the investigation. *See, e.g.*, (Ex. 3 at 25, 27) (requesting to search a "Silver Mercedes" after concluding an initial investigation); (*id.* ¶ 2) (stating that the CS described the vehicle as being "black in color with red accents"); (*id.* ¶ 4) (stating that local authorities found a vehicle described as being "dark in color"). Contrary to Garcia's assertions, describing the color of the vehicle in this way is not a violation of law under *Franks*, but is instead SA Rosborg's attempt to comport with the requirements of the Fourth Amendment. *See Franks*, 438 U.S. at 165 (holding that the search warrant application must "allow the magistrate to make an independent evaluation of the matter"). Stated differently, SA Rosborg provided Judge Davick-Haflen all of the information necessary to allow her to make her own independent assessment of the warrant application in this regard and Garcia's allegations do not give rise to a finding that these statements were deliberately false or a were made with reckless disregard for the truth.

### 2.    Vehicle Plates

Garcia next argues that because SA Rosborg and Agent Place did not state in their respective ROIs that the vehicle had temporary plates from a dealership in California, any

mention of the California plates in the search warrant affidavits must be an indication that SA Rosborg intentionally misled Judge Davick-Haflen. *See* (Def.'s Mem. in Supp. of *Franks* Mot. at 11–12). Garcia's argument is without merit. Importantly, Garcia appears to misrepresent the information that is contained in the ROIs. In particular, contrary to Garcia's assertions that "[v]ehicle plates are not mentioned in either SA Rosborg or Agent Place's [ROIs]," SA Rosborg and Agent Place **did** mention California dealer plates in their respective ROIs. *Compare* (Def.'s Mem. in Supp. of *Franks* Mot. at 11) (asserting that the ROIs did not mention the vehicle plates), *with* (Ex. 1 ¶ 7) (stating that "the vehicle possessed dealer plate [sic] from Fusion Motors" and "[a]n open source check of Fusion Motors determined that the dealership is located in Moreno Valley, CA"), *and* (Ex. 4 ¶ 2) ("The late Mercedes model was displaying dealer plates advertising Fusion Motors in Moreno Valley, CA.").

To the extent that Garcia is arguing that SA Rosborg or Agent Place did not include the dealer plates in their respective ROIs when presenting the description provided to him by the KCDO, this argument is unpersuasive. In particular, Garcia provides no rationale as to why the inclusion of California plates in one section of the ROI but not in another is of any consequence. Furthermore, Garcia only makes bare assertions and does nothing to otherwise establish that this omission is a deliberate falsehood or done with reckless disregard for the truth. As described above, Garcia's bare assertions, without some form of additional support, are insufficient to meet his substantial burden under *Franks*. *See Mathison*, 157 F.3d at 548. Garcia's argument does not support any conclusion that SA Rosborg intentionally or recklessly misled Judge Davick-Haflen with respect to the vehicle plates.

### 3.       CS Communication with Garcia

Garcia asserts that because the ROIs are devoid of particulars related to the alleged communication between the CS and Garcia, any mention of that communication in SA Rosborg's affidavits in support of the search warrants is necessarily fabricated. *See* (Def.'s Mem. in Supp. of *Franks* Mot. at 12). The only support that Garcia provides is his own allegation that "[s]urely, had the CS actually spoken with Torres, as SA Rosborg stated in the affidavits, he would have included it somewhere in his report." (*Id.*). Also, as described above, there are numerous reasons for an ROI to differ from a search warrant affidavit that do not implicate the truthfulness of the search warrant affidavit. For example, as the Government noted, the ROIs and search warrant affidavits are "written for a completely different purpose." (Mem. in Opp'n to Garcia's Mots. at 5). Here, Garcia's speculative and unsupported argument is wholly insufficient to meet the substantial burden under *Franks*. *See Mathison*, 157 F.3d at 548.

### 4.    Failed Attempts to Connect with CS

In similar fashion, Garcia argues that particulars related to communications between SA Rosborg and the CS were omitted from the search warrant affidavits in a deliberate attempt to mislead Judge Davick-Haflen. (Def.'s Mem. in Supp. of *Franks* Mot. at 12–13). For example, Garcia asserts that SA Rosborg's omissions in the search warrant affidavits of his failed attempts to contact the CS necessarily means that SA Rosborg was attempting to misled Judge Davick-Haflen with respect to the CS's credibility. (*Id.* at 13). But Garcia provides no reasoning as to why SA Rosborg's failure to reach the CS on two separate occasions is even noteworthy, let alone evidences some fundamental deficiency in the CS's credibility for which Judge Davick-Haflen should have been made aware.

Next, Garcia argues that "SA Rosborg's statement that the check-in date coincided with the CS' claim of Torres' arrival is nothing short of clear misrepresentation." (*Id.*). Apparently,

Garcia believes that because "[t]here was no indication that the CS knew when or where Torres arrived" in SA Rosborg's ROI, any discussion directed thereto in the search warrant affidavit must necessarily be false or in reckless disregard for the truth. *See* (*id.*). As discussed above, articulating discrepancies between the ROI and the search warrant affidavits—without more— does not establish that SA Rosborg's statements or omissions in the search warrant affidavits were deliberately false or made with reckless disregard for the truth.

### 5.      KCDO and CS Uncertainty

Garcia argues that SA Rosborg intentionally omitted at least some indications that the KCDO and the CS were uncertain as to particular factual aspects. (Def.'s Mem. in Supp. of *Franks* Mot. at 13). Garcia asserts that "SA Rosborg would not have wanted to include **any such uncertainty** because it would have detracted from the probable cause determination." (*Id.*) (emphasis added). Aside from the fact that Garcia's argument is unsupported in the manner required under *Franks*, Garcia's argument is contradicted by the facts before the Court. SA Rosborg **did** include uncertainty with respect to the CS's knowledge of which hotel Garcia would be staying—which Garcia does not dispute. (*Id.*); *see also* (Ex. 2 ¶ 3) ("The CS stated that Torres would be staying at a hotel in the city of St. Cloud, MN, **but was unaware of which one**.") (emphasis added); (Ex. 3 ¶ 3) (same). The inclusion of uncertainty undermines Garcia's argument that SA Rosborg intended to mislead Judge Davick-Haflen by completely omitting uncertainty from his warrant affidavits. *See* (Def.'s Mem. in Supp. of *Franks* Mot. at 13). Without more, there is nothing to suggest that SA Rosborg intentionally or recklessly misled Judge Davick-Haflen with respect to uncertainty surrounding the information contained in the search warrant affidavits.

### 6.      Vehicle Did Not Match CS Description

Garcia's next argument is that SA Rosborg misled Judge Davick-Haflen, when he stated that law enforcement "'located a vehicle matching the description of the one alleged to be driven by Torres.'" (Def.'s Mem. in Supp. of *Franks* Mot. at 13) (quoting Ex. 2 ¶ 4; Ex. 3 ¶ 4). Given that the vehicle was the proper make and model, contained dealership plates from Garcia's point of origin, and was similar in color to the car described by the CS, there is nothing to suggest that SA Rosborg misled Judge Davick-Haflen with respect to whether this car matched the description of vehicle provided by the CS. This is further supported by the fact that SA Rosborg's application and affidavit for the search warrant of the vehicle included the various color discrepancies. *See* (Ex. 3 at 25, 27) (requesting to search a "Silver Mercedes"); (*id.* ¶ 2) (stating that the CS described the vehicle as being "black in color with red accents"); (*id.* ¶ 4) (stating that local authorities found a vehicle described as being "dark in color"). Judge Davick-Haflen was fully capable of determining on her own whether the vehicle "matched" the CS's description based on the totality of information included in the affidavits. Thus, there is nothing to suggest that SA Rosborg's statements in his warrant affidavits in this regard were deliberately false or made with reckless disregard for the truth. *Cf. Franks*, 438 U.S. at 165 (holding that the search warrant application must "allow the magistrate to make an independent evaluation of the matter").

### 7.    No Connection Between 2016 Seizure and Garcia

Garcia provides a conclusory argument that the statement that "'other members of the drug trafficking organization have checked into hotels using false names'" in the warrant affidavit is misleading because Garcia—allegedly—is not connected with the August 2016 seizure. *See* (Def.'s Mem. in Supp. of Mot. for *Franks* Hearing at 14) (quoting Ex. 2 ¶ 5; Ex. 3 ¶ 5). Again, Garcia's bare assertions are insufficient to meet his substantial preliminary showing

under *Franks*. *See Mathison*, 157 F.3d at 548. Nevertheless, whether Garcia is, or is not, a member of the trafficking organization may have implications at his trial, but this factor is largely irrelevant for the issues before the Court. The CS, who previously provided information that led to the August 2016 seizure, provided information that Garcia would be transporting methamphetamine and stopping at a hotel in St. Cloud, Minnesota. *See, e.g.*, (Ex. 2 ¶¶ 1–2). SA Rosborg also communicated with the CS who verified this information and affirmed making contact with Garcia within the last four hours. *See, e.g.*, (*id.* ¶ 3). Based on this information, it was reasonable for SA Rosborg to assume that Garcia was part of the same trafficking operation and would therefore be checked into the hotel using a false name. Consequently, there is nothing to suggest—based on the information SA Rosborg had at the time he drafted the search warrants—that SA Rosborg intentionally or recklessly misled Judge Davick-Haflen in this regard.

In sum, Garcia has failed to meet his substantial burden of establishing that SA Rosborg's affidavits supporting the requested warrants included deliberate falsehoods or statements or omissions which were made in reckless disregard for the truth. In at least some instances, the inconsistencies upon which Garcia relies are indicia of truthfulness, not falsehood. *See, e.g.*, (Ex. 3 at 25, 26 ¶¶ 2, 4, 27) (describing the vehicle differently as the investigation evolved). At worst, differences between the respective ROIs and the challenged warrant affidavits indicate a negligent or innocent mistake. But, "[a]llegations of negligence or innocent mistake are insufficient." *Franks*, 438 U.S. at 171. Consequently, the Court recommends that Garcia's Motion for a Franks Hearing be denied.

### 8.    Motion to Suppress

In light of Garcia's failure to establish a violation under *Franks*, the Court could recommend that Garcia's Motion to Suppress be denied at this stage because Garcia cannot overcome the search warrant affidavits' presumptive validity.[3] *See Franks*, 438 U.S. at 171 ("There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant."); *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (stating that a court is circumscribed to the four corners of the of the supporting affidavit when determining the existence of probable cause); *cf. United States v. Freeman*, 625 F.3d 1049, 1052 (8th Cir. 2010) (holding that once the defendant can no longer make a "strong initial showing" under *Franks*, a district court can deny a motion to suppress premised on violations under *Franks*). Nevertheless, in the interest of thoroughness, the Court addresses Garcia's additional arguments. Namely, that the law enforcement's failure to conduct an adequate investigation and the unreliability of the CS support a finding there was no probable cause to issue the warrants and therefore the evidence obtained from the execution thereof should be suppressed. (Def.'s Mem. in Supp. of Mot. to Suppress at 9–12).

Garcia's additional arguments in support of his Motion to Suppress are without merit. Garcia argues that because law enforcement officers did not conduct what he considers to be a reasonable investigation based on the CS's tip, there was insufficient probable cause to support the issuance of the warrants. (*Id.* at 11–12). For example, Garcia would have the Court believe that because the law enforcement officers did not identify Garcia beyond a reasonable doubt, this necessarily means that there was insufficient probable cause to support the issued warrants. *See,*

---

[3]      Because this Court finds that the warrants are valid, it does not analyze the execution of a warrant later determined to be invalid under the *Leon* exception articulated in *United States v. Leon*, 468 U.S. 897 (1984).

*e.g.*, (*id.* at 11) ("Only **after** Mr. Garcia was arrested was a photograph sent to the KCDO who sent it to the CS who positively identified him as Alex Torres.").

Garcia's arguments conflate the standards of probable cause and what is required to support a conviction. "Probable cause exists where there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Donnelly*, 475 F.3d 946, 954 (8th Cir. 2007) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "'Probable cause . . . does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime.'" *Id.* (omission in original) (quoting *United States v. Mounts*, 248 F.3d 712, 715 (7th Cir. 2001)). Whether probable cause exists "at the time of the search is a commonsense, practical question, to be judged from the totality of the circumstances." *Id.* (internal quotation marks omitted). Stated differently, "[p]robable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a **fair probability** that contraband or evidence of a crime would be found in a particular place." *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000) (emphasis added). To suggest, as Garcia does, that evidence should be suppressed because the warrants are not supported by something **greater** than probable cause is contrary to law.

Likewise, Garcia's attempt to paint the CS as unreliable or otherwise not credible as a basis to support his arguments is fruitless. "[W]here the informants' information is at least partially corroborated, attacks upon credibility and reliability are not crucial to the finding of probable cause." *See United States v. Humphreys*, 982 F.2d 254, 259 (8th Cir. 1992). Here, the CS provided much in the way of credible information that was later corroborated by members of law enforcement in the process of obtaining the search warrants. The CS provided the correct make of the vehicle, place of origin, and approximate time of arrival. The **only** thing the CS

19

seems to have stated incorrectly is the color of the vehicle—stating the vehicle was black (or black with red accents) when in fact it was dark silver. *Compare* (Ex. 1 ¶ 3) (stating that the CS described a black vehicle), *and* (Ex. 3 ¶ 2) (stating that the CS described the vehicle as being "black in color with red accents"), *with* (Ex. 6) (showing the car to be dark silver).

The additional investigation that was conducted by the members of law enforcement after the vehicle was located corroborated much of the information provided by the CS. *See, e.g.*, (Ex. 2 ¶¶ 3–5) (detailing the manner in which the law enforcement officers corroborated the CS's information). Under the circumstances, a reasonable person could believe there to be a fair probability that the methamphetamine that the CS stated was being transported in the vehicle would be present in either the hotel room or in the vehicle itself—and Garcia is unpersuasive in suggesting otherwise. For example, after canvassing hotels throughout St. Cloud, law enforcement found a vehicle matching the general description provided by the CS. *See, e.g.*, (Ex. 2 ¶ 4). SA Rosborg and other members of law enforcement then inquired as to the occupants of the hotel with members of the hotel staff. *See* (Ex. 2 ¶ 5). Law enforcement first noticed that "only one person on the registry was from California." (*Id.*). Law enforcement next noted that Garcia paid in cash—in accordance with the practice of other drug traffickers to avoid identification. (*Id.*). Because Garcia's arrival "coincide[d] with the CS's statement," in light of all of the other observations, and because "other members of the drug trafficking organization have checked into hotels using false names," law enforcement surmised that "Luis Garcia is believed to be a pseudonym for Torres." (*Id.*). The mere fact that the color of the vehicle was different than the one provided is therefore inconsequential based on the totality of the remaining corroborated evidence.

As a result, there is nothing to suggest that the search warrants are not supported by probable cause. This Court must therefore recommend that Garcia's Motion to Suppress be denied.

## IV.   RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.   Defendant Luis Angel Garcia's ("Garcia") Motion for a *Franks* Hearing [Doc. No. 25] be **DENIED**; and

2.   Garcia's Motion to Suppress Evidence Obtained as a Results of Search and Seizure [Doc. No. 27] be **DENIED**.

Dated: April 20, 2017

 *s/ Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

### Notice

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after objections are filed; or (2) from the date a timely response is filed.